WESTERN UNION TELEGRAPH CO. v. JOS. H. BROWN

(Case No. 1265.)

1. NEGLIGENCE — DAMAGES.—A telegraph company received a message from a banking house acting as agent of the plaintiff, directed to another banking house in New Orleans, to protect his note then about to mature. The price of repeating the message was paid as demanded by the regulations of the company. The message never reached its destination, nor could it ever be traced beyond a town in a county adjoining the one from which it was sent. There was no testimony showing that the company was negligent in selecting competent employees, or that the facts above stated were ever communicated to any of its general officers, or that the company ever approved the conduct of the operator who undertook to transmit the message. *Held,*

(1) The delivery of the message to the operator, and his receipt of the same and of the price charged for transmitting it, constituted a contract between the bank that sent the message for the use of the plaintiff and the telegraph company.

(2) The duty of the operator who transmitted the message was to inquire after it, and if necessary, to repeat it. His failure to do this was negligence which subjected the company to such actual damages as the plaintiff sustained from a failure to deliver the message.

(3) In such case the measure of damages would not be limited to the stipulated damages contained in the printed forms of the company providing for a repeated message, but would include the actual injury, if any, sustained by the plaintiff through the non-delivery of the message.

(4) Such injury would in a proper case embrace the damage done to the credit and standing of the plaintiff as a merchant.

(5) The corporation was not liable for exemplary damages.

(6) To make the defendant company liable for exemplary damages, the act complained of must have been done with its authority, either express or implied, or such act must have been subsequently adopted by the company.

(7) The issue of exemplary damages should not have been submitted to the jury.

APPEAL from Tarrant.    Tried below before the Hon. A. J. Hood.

*Stemmons & Field,* for appellant.

I. The court erred in sustaining exceptions to that portion of appellant's answer which sought to limit the amount of appellant's recovery by reason of agreement at time of delivery of said message, and by reason of the contract relied on in said answer. That appellant could thus limit its liability is, we think, fully settled by the following authorities: Thompson on Negligence, vol. 2, pp. 835, 836; note 1, sec. 4, pp. 839–40; Allen's Telegraph Cases, pp. 85, 196, 273, 203, 345, 463, 663, 708; Scott & Jarnagin, Law of Telegraphs, ch. 2, pp. 104, etc.

.  .  . IX. The court erred in refusing to charge the jury as asked by appellant in special charge No. 1, that, "unless you believe from the evidence that defendant has done plaintiff a wrong, as

claimed by plaintiff, and unless you further believe from the evidence that plaintiff has suffered damage from the doing of said wrong, you will find for the defendant." Western Union Tel. Co. v. Bertram & Moeler, by Commissioners of Appeals.

X. The court erred in refusing to charge the jury, as requested by appellant, "You are further instructed that there was no evidence of malice, ill-feeling, or intentional wrong done by defendant to plaintiff; the measure of damages in this case is the actual damages sustained by plaintiff; that is, the amount of actual loss in money, sustained by plaintiff, directly traceable to the wrong done him by defendant." Hays v. H. & G. N. R. R. Co., 46 Tex., 272; Wardrob v. Stage Co., 7 Cal., 118; Mendehlson v. Anaheim L. Co., 40 Cal., 657; Turner v. North Beach R. R., 34 Cal., 594; Hill v. The N. O. & G. W. R. R. Co., 11 La. Ann., 292; Milwaukee & Miss. R. R. v. Finning, 10 Wis., 330; Illinois Cent. R. R. Co. v. Hammer, 72 Ill., 347.

*Ball & McCart*, for appellee.

I. The court did not err in overruling defendant's general demurrer to plaintiff's petition. The petition sets up and discloses a transaction between plaintiff and defendant alone. It alleges that plaintiff delivered the message to defendant, and that defendant then and there accepted and received the same from plaintiff for transmission for certain hire and reward paid by plaintiff. It nowhere discloses any privity between Tidball, Van Zandt & Co. and the defendant. It avers that defendant, contriving and intending to defraud and injure plaintiff, not Tidball, Van Zandt & Co., etc. Hutchinson on Carriers, sec. 723.

II. The court did not err in sustaining plaintiff's demurrer to that part of defendant's answer which set up and relied on the alleged special contract, limiting the amount of damages recoverable from defendant for delay, mistake, or failure to transmit the telegram. The action is, *ex delicto*, and charges defendant with gross and wilful neglect of its duty, and a telegraph company will not be allowed to limit its liability for its acts of gross negligence; besides, defendant does not allege that said contract was made with plaintiff, but with Tidball, Van Zandt & Co. Thompson on Negligence, vol. 11, p. 835; notes, § 1, p. 839, § 4, pp. 840 to 845; Scott & Jarnagin on Tel., secs. 142, 143, 205, 260, 261, 262, 265 and 266; W. U. Tel. Co. v. Weiting, Texas Ct. of App., Opinion by P. J. White (also see 17 Wall., 357); True v. Tel. Co., 11 Am. Rep., 156, and notes thereto (60 Me., 9); Cande v. Telegraph, 8 Alb. Law Jour., 293; Tyler v. W.

U. T. Co., 14 Am. Rep., 38 (60 Ill., 421); Same v. Same, 24 Am. Rep., 279, and notes thereto (74 Ill., 168).

III. Corporations are liable to exemplary damages, and such damages may be recovered against them in a proper case.   Where, in an action *ex delicto*, there is evidence which tends to show that defendant was guilty of either wilful misconduct or of such entire want of care as would raise the presumption of a conscious indifference to consequences, it was proper for the court to charge the jury that if they believed from the evidence that such was the case, they might assess exemplary damages against the defendant.   Exemplary damages are not confined to compensation for actual injuries, but are assessed for the purpose of prevention of a repetition of the wrong and by way of punishment to the wrongdoer, and if the circumstances in evidence satisfy the jury that a corporation has ratified, or connived at, the gross negligence of its agents or servants, they have the right, and it is their duty, to award the party injured by such gross negligence a verdict for exemplary damages against such corporation.   Hays v. H. & G. N. R. R., 46 Tex., 280; 6 Tex., 352; Smith v. Sherwood, 2 Tex., 460; 9 Tex., 20; 27 Tex., 620; Milwaukee & St. Paul R'y v. Arms, 91 U. S., 489; Scott & Jarnagin on Telegraphs, secs. 69, 418; Thompson on Carriers, pp. 393–4, 575; Thompson on Negligence, p. 857, as to receiving clerk; Perkins v. Missouri R. R., 55 Mo., 201; 57 Mo., 17; 66 Mo. 536; Goddard v. Grand Trunk R. R., 57 Me., 202–223; 19 Ohio St., 157; id., 162; 47 N. Y., 282; 62 Me., 84; 57 Ill., 59; R. R. v. Hurst, 36 Miss., 660; Hopkins v. R. R., 36 N. H., 9; 1 Redfield on Railways, 515 *et seq.;* Bawser v. Lane, 3 Met. (Ky.), 311; 38 Ind., 116; 27 Md., 277; 11 Nev., 250; 55 Mo. 201; 66 Mo., 536.

BONNER, ASSOCIATE JUSTICE.— On December 4, 1880, the appellee in this case, Joseph H. Brown, to meet and protect his acceptance for $5,679.93, in favor of Dymond & Gardes of the city of New Orleans, which matured on the 6th of the same month, procured from the banking house of Tidball, Van Zandt & Co., of Fort Worth, "telegraphic exchange" on New Orleans.   This he did by receiving from Tidball, Van Zandt & Co. the following message:

"FORT WORTH, TEXAS, 12–4, 1880.

"*To Louisiana National Bank, New Orleans, La.:*

"Protect Joseph H. Brown's note to Dymond & Gardes, due sixth instant.

(Signed)           "TIDBALL, VAN ZANDT & CO."

On the same day appellee Brown caused the message to be

delivered to the receiving clerk of appellant, the Western Union
Telegraph Company, at its office in Fort Worth; and to procure its
safe and correct transmission, he caused to be paid to said clerk, not
only the price demanded to send the message to New Orleans, but
also that demanded to have it repeated, as required by the rules and
regulations of the company. The clerk was aware of the impor-
tance of the message and promised to have the same promptly for-
warded.

It was shown that the usual time required to send a message from
Fort Worth to New Orleans was about two hours. It never in fact
reached New Orleans, and in consequence the demand of Dymond
& Gardes against Brown was duly protested, by reason of which
Brown claims that he has been damaged, and for which this suit is
brought. The only testimony bearing upon the question of the fail-
ure to receive the message in New Orleans was, that the manager
and chief operator of the company at Fort Worth, some days after-
wards, upon inquiry, informed the clerk of Brown that he could not
trace it further than to Dallas, in the adjoining county. It does not
appear when the message was sent from the office at Fort Worth, or
why, as it was not repeated within a reasonable time to Fort Worth,
inquiry was not made in regard to it. Further than this, there was
no testimony tending to prove that the defendant company was neg-
ligent in selecting competent servants and agents in the first in-
stance; or that knowledge of the above facts was brought home to
any general officer representing the company in its corporate capac-
ity; or that after such knowledge, it approved or adopted the neg-
ligence of the operator.

The court below in the general charge instructed the jury both
upon the issues of actual and exemplary damages, and upon the lat-
ter issue refused certain instructions asked by the company. The
jury returned a verdict for plaintiff for $4.50 actual damages and
$5,000 exemplary damages. From the judgment rendered on this
verdict, this appeal is prosecuted.

There are fifteen assigned errors. Those relied on relate to the
question of exemplary damages.

The delivery of the message to the agent of the company and his
receipt of the same, and of the price charged for transmitting it,
constituted a contract between Tidball, Van Zandt & Co., for the use
of plaintiff Brown, and the defendant company. The message was
one which, by the terms of this contract, was required to be repeated
to the office at Fort Worth, and as it was not heard from there
within a reasonable time, due diligence on the part of the operator

required that it should have been inquired after, and if necessary, that it should have been repeated from that office. The failure to do this, without any excuse therefor, is such evidence of want of due care as would subject the company to such actual damages as the testimony may show that Brown legally sustained in consequence thereof.

In such cases, as intimated, though not decided, in Western Union Telegraph Co. v. Andrew Neill, 57 Tex., 283; the measure of damages would not necessarily be confined to the stipulated damages stated in the printed conditions upon the blank forms of the company, providing for a repeated message, but would extend to the legal injury, if any, sustained by the failure to send the message, and which, in a proper case, would embrace the injury to the credit and standing of the plaintiff as a merchant.

The court, after instructing the jury as to actual damages, proceeds: "And if you further find that defendant failed to transmit and deliver said message, and that defendant, to wit, said telegraph company, in the said failure was guilty of such gross negligence and conscious indifference to the rights of the plaintiff as show a wilful intention to injure the plaintiff, then in case you so conclude and find, it will be your duty not only to return a verdict for the amount of actual damages, if any, sustained by him, but you will, in addition thereto, allow the plaintiff such punitory or exemplary damages as may to you seem right and proper, under all the facts and circumstances in evidence before you, not to exceed $10,000."

Among other special charges, the following was asked by the company and refused: "You are further instructed that there was no evidence of malice, ill-feeling, or intentional wrong done by defendant to plaintiff; the measure of damages in this case is the actual damages sustained by plaintiff; that is, the amount of actual loss in money sustained by plaintiff, directly traceable to the wrong done him by defendant."

It is now the settled law of this state, that, to make a corporation liable for exemplary damages, the "fraud, malice, gross negligence or oppression" which must authorize and justify the same, must have been committed by the corporation itself, or some superior officer representing it in its corporate capacity; or, if committed by a subordinate servant or agent, the act must have been either previously authorized, or subsequently ratified or approved by the company or such superior officer after knowledge of the facts. In other words, the same rules in regard to such damages, which apply to private individuals or firms and their servants or agents in the rela-

tion of master and servant or principal and agent, apply also to corporations. Hays v. R. R. Co., 46 Tex., 272; Wallace v. Finberg, 46 Tex., 37; Willis & Bro. v. McNeill, decided at the present term.

This rule is sustained by the great weight of authority, and no other, consistent with principle and justice, can be adopted. In the leading case of Hays v. R. R. Co., it is said that corporations as well as individuals may deserve punishment. But no more than individuals are they to be punished for the malicious acts of their agents. It is obvious that no distinction can be made as to this liability whether the master be a natural or an artificial person.

In Wallace v. Finberg, 46 Tex., 37, Roberts, C. J., in speaking of the true character of damages, actual and exemplary, says, that they should be " presented as separate and distinct causes of action or cross-action, with the averments respectively appropriate to each remedy, which are essentially different in the facts necessary to be averred." He further says that " if the agent who makes the affidavit (for attachment) and bond acted maliciously in doing it, he is responsible; but his malice would not be imputed by presumption to his principal, while his bad judgment in wrongfully suing out the writ would be."

This principle has been repeatedly applied both to individuals and corporations. Exemplary damages being given by way of punishment under our decisions, and being necessarily penal in their character, the motive which authorized their infliction, as said in the above case, will not be imputed by presumption to the principal when the act is committed by an agent or servant. In such case it must be shown by direct testimony on behalf of the plaintiff, or as the reasonable and probable deduction from the evidence, either that the principal authorized or ratified the act.

In Turner v. R. R. Co., 34 Cal., 600, where the company was sought to be made liable for an act of its servant, it was said that " to render the defendant liable for punitive damages, it was incumbent on the plaintiff to show that the act complained of was done with the authority, either express or implied, of the defendant, or was subsequently adopted by the company."

In the case under consideration, the record fails to show either such express or implied authority, or such subsequent adoption or approval by the company of the negligence of the agent. It also fails to show by any sufficient evidence, either that the company was, in the first instance, negligent in the selection of its servants, or that, after knowlege of the facts, they ratified or approved the negligent act complained of. In our opinion the evidence did not

authorize the learned judge presiding below even to submit the issue of exemplary damages to the jury.

This dispenses with the consideration of the question whether the verdict on this branch of the case was excessive.

For the above error the judgment below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 15, 1882.]