GULF, COLORADO & SANTA FE RAILWAY COMPANY V. JOHN B. KIRKBRIDE.

No. 6746.

1.   **Pleading—Evidence.**—It was alleged in the petition that plaintiff's expulsion from the car in motion (from which he suffered injury) was caused "by an agent or servant of the defendant company in charge of the car." Under this allegation it was relevant to show in evidence who might properly eject persons from the train

2.   **Charge—Acts of Employes in Charge of Car.**—It was proper to instruct the jury that "if the defendant's servant within the scope of his employment, by peremptory order and by violent and threatening language towards the plaintiff, caused plaintiff to get off the defendant's car while the same was moving at so great a rate of speed as to render such getting off manifestly dangerous, and that by reason of such speed the plaintiff was injured in getting off, they should find for the plaintiff.

3.   **Ratification — Retention of Employe After Misconduct.** — The court charged the jury that if the servant acted without the scope of his authority when ordering plaintiff from the car they should find for the defendant, "unless you should further find from the evidence that the defendant company, after full notice of the conduct of its employe, ratified the same by retaining him in its employment, in which last case you will find for the plaintiff." This was erroneous. We are not prepared to hold that the performance of a wrongful act by a servant for which his employer for any reason is not liable at the time the act is committed shall become the act of the employer simply because he refuses to discharge the servant from his employment.

APPEAL from Lamar.   Tried below before Hon. E. D. McClellan. The opinion contains a statement.

*Hale & Hale*, for appellant.—1.   Extraneous facts necessary to fix liability of the principal for acts of his agent must be alleged in order to be proved.   Railway v. Donahoe, 56 Texas, 162; Denison v. League, 16 Texas, 409, and authorities; Patt. Ry. Acc. Law, sec. 198; Stringer v. Railway, 9 S. W. Rep., 905; Austin v. Ritz, 72 Texas, 391; 72 Mo., 63, 66; 66 Mo., 576; 69 Pa. St., 210.

2.   The court erred in the second clause of its charge to the jury in charging, in effect, that the retention of the employe whose conduct is complained of in the service of the defendant in any position after the injury complained of was inflicted, if the defendant knew of the conduct of the employe, would of itself entitle the plaintiff to recover actual damage, and the court ought to have granted the defendant's motion for a new trial on this ground.   Railway v. Moore, 69 Texas, 159.

3.   Voluntarily leaping from a car when it is moving at a dangerous rate of speed, when there is no immediate and imminent danger in remaining on it, is negligence, and will defeat a recovery on the part of a trespasser who sues for damage caused by the leap.   Patt. Ry. Acc. Law, sec. 197.

*Hodges & Allen*, for appellee. — Where a railway's servant is put in

charge of its cars it is within the scope of his employment to protect the same and to remove trespassers.    Patt. Ry. Acc. Law, secs. 111, 112.

If the charge complained of as an abstract proposition of law is erroneous, it could not avail anything in this case, because there was no issue made by the evidence that the charge complained of could have affected in the remotest degree.    There was no evidence that the employe was acting beyond the scope of his employment; no evidence that appellant ever had any notice of his wrongs; no evidence that appellant retained said employe in its employment after they had notice of his wrongs.

Where a charge as an abstract proposition of law is incorrect the court will not reverse if it clearly appears that it did not affect the verdict.    Carter v. Eames, 44 Texas, 554; Gaston v. Dashiell, 55 Texas, 518.

HENRY, Associate Justice.—This suit was brought by appellee to recover damages.    His petition charges that he was expelled from the top of a box car upon defendant's road "by one of the employes and agents or servants of the defendant, who was then in charge of and assisting as such employe in moving said box car."

The evidence shows that the plaintiff and another man were sitting on the top of a box car which was standing on a side track in the defendant's yard at Paris.    That without their observing it an engine was attached to the car and it was put in motion.    That "a man" came on the top of the car and asked plaintiff and his companion where they were going, and upon his being told by them that they were not going anywhere he ordered them off.    That they objected to obeying because the train was running too fast, and requested him to stop it so that they could get off.    That the man again ordered them off, using toward them abusive language and threatening to inflict personal violence upon them if they did not obey him, which he repeated to plaintiff after he had climbed down a ladder on the side of the car.    That plaintiff, under the apprehension of and to escape violence, leaped from the ladder and was injured on account of the rapid rate of speed at which the car was being propelled.    That the man "came from the direction of the engine."    That the man "says his name is John Childress, and he was a brakeman, a yard master, or a switchman of the defendant."    That "John Childress worked for the defendant from the time the road first came to Paris until the latter part of the summer or early fall of 1887."    That John Childress was the name of the man who ordered plaintiff off of the car, and that he "had been trying to keep the boys off of the cars all day."    That "the yard master, his foreman or switchman when authorized by the yard master, have the right to eject anyone from the train while in the yard switching," and that "conductors or anyone in charge of the trains have the right to eject anyone from the train."

It was proved that John Childress was in the service of the defendant subsequent to the date of plaintiff's injury.

Appellant assigns the following errors:

"1.   The court erred in admitting over defendant's objection the following language, used by the witness J. R. Tillman in his depositions in answer to the fourth interrogatory, to-wit, 'Conductors or anyone in charge of the trains have the right to eject anyone from the trains;' there being nothing in the plaintiff's petition to show what the duties of any of the employes of the defendant are, or who had charge or control of the train, or what the duties of the employe whose conduct is complained of were.

"2.   The court erred in the second clause of its charge to the jury in charging, in effect, that the retention of the employe whose conduct is complained of in the service of the defendant in any position after the injury complained of was inflicted, if the defendant knew of the conduct of the employe, would of itself entitle the plaintiff to recover actual damage, and the court ought to have granted the defendant's motion for a new trial on this ground.

"3.   The charge of the court in the first paragraph, in which the jury is charged that violent and threatening language alone of defendant's employe toward the plaintiff, who was a trespasser, would justify the plaintiff in leaping from the ladder of the car when moving at a dangerous rate of speed, although such language was unaccompanied by any force or physical violence or any attempt at such, and although the defendant's employe did not have the ability to use violence or to kick or throw plaintiff off the car, nor in a position to do so, was error, and for this error the court ought to have granted a new trial."

The allegation in the petition that plaintiff's expulsion was caused by an agent or servant of the defendant in charge of the car authorized the introduction of the evidence with regard to who might properly eject persons from the train.

The court charged the jury that if defendant's servant "within the scope of his employment, by peremptory order and by violent and threatening language toward plaintiff, caused plaintiff to get off defendant's car while the same was moving at so great a rate of speed as to render such getting off manifestly dangerous, and that by reason of such speed the plaintiff was injured in getting off," they should find for the plaintiff.

We can see no objection to this charge.

The court also charged the jury that if the servant of defendant acted without the scope of his authority when ordering plaintiff to descend from the car they should find for the defendant, "unless you should further find from the evidence that the defendant after full notice of the conduct of its employe ratified the same by retaining him in its employment, in which last case you will find for plaintiff."

This charge, we think, was erroneous. We are not prepared to hold. that the performance of a wrongful act by a servant, for which his employer for any reason is not liable at the time the act is committed, shall become the act of the employer afterwards simply because he refuses to discharge the servant from his employment. Railway v. McDonald, 75 Texas, 46.

We think it would be extending the doctrine of ratification too far to apply it to such a case as the one before us. Notwithstanding his one fault the servant may be a useful and deserving one and worthy of promotion and encouragement. We do not think it either just to the individual, necessary for the general good, or a wise public policy to so arbitrarily punish the master for lenity to a servant otherwise deserving and perhaps penitent.

The rule invoked might lead to the discharge of an innocent and useful servant when wrongfully accused or suspected, because his employer could not be certain in advance what would be the result of a future trial, and instead of taking the risk of being charged with a pecuniary liability for which he was not otherwise responsible might discharge the servant.

If it had been proved beyond dispute that the person who ordered the plaintiff to leave the car was a servant of the defendant in charge of the car or acting within the scope of his employment, we would not feel authorized to reverse the judgment on account of this error.

While we think the allegations that the person who committed the wrong was in charge of the car for the defendant and acting within the scope of his employment were sufficiently sustained by the evidence to have supported the verdict, we still find the evidence to contain so much of the elements of indefiniteness and uncertainty as to leave us unable to conclude that the verdict may not have resulted solely from the erroneous charge.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered February 3, 1891.